UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LEE, | Case No. 17-CV-7249 (JMF) |
| Plaintiff, | |
| -against- | |
| KYLIN MANAGEMENT LLC and TED KYUNG-HO KANG, | |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Jeffrey L. Liddle
LIDDLE & ROBINSON, L.L.P.
1177 Avenue of the Americas
New York, New York 10036
Tel: (646) 452-7211
Fax: (646) 452-7001
jliddle@liddlerobinson.com
Counsel for Defendants

## TABLE OF CONTENTS

Page

PRELMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................ 3

ARGUMENT .............................................................................................. 6

I.      THE NEW YORK LABOR LAW PROVISION GOVERNING
        SALES COMMISSIONS DOES NOT APPLY TO PLAINTIFF........................ 6

II.     AS A MATTER OF WELL-SETTLED LAW THERE WAS
        NO "'DEDUCTION FROM WAGES" UNDER NYLL §193............................. 8

III.    THERE IS NO BREACH OF THE AGREEMENT
        FOR A DISCRETIONARY BONUS SINCE NO
        BREACH HAS BEEN SHOWN, SUMMARY
        JUDGMENT DISMISSING THE SECOND AND
        THIRD CAUSES OF ACTION SHOULD BE GRANTED .............................. 10

IV.     SUMMARY JUDGMENT SHOULD BE GRANTED
        ON QUASI CONTRACT CLAIMS THAT ARE
        COVERED BY A VALID AND ENFORCEABLE WRITTEN
        CONTRACT GOVERNING THE SAME SUBJECT MATTER......................... 12

V.      `LEE'S CLAIM FOR UNJUST ENRICHMENT
        AGAINST KANG MUST FAIL ............................................................... 13

CONCLUSION ........................................................................................... 16

i

# TABLE OF AUTHORITIES

Page

## CASES

Canstar v. J.A. Jones Construction Company, 212 A.D. 2d 452,
622 N.Y.S. 2d 730 (1st Dep't 1995)……………………………………………………..11

Clark Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E. 2d 190,
193 (N.Y. 1987)……………………………………………………………………… 13

Cohen v. Avanade, Inc., 874 F.Supp. 2d 315, 321 (S.D.N.Y. 2012)…………………8, 15

Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013)……………………11

Gold v. Am. Med. Alert Corp., No. 14 CIV. 5485 JFK, 2015
WL 4887525, at *1 (S.D.N.Y. Aug. 17, 2015) (Keenan, J.)……………………………9

Goldberg v. Jacquet, 667 F. App'x 313, 314 (2d Cir. 2016) (Crotty, J.)…………………9

In re First Cent. Fin. Corp., 377 F.3d 209, 213 (2d Cir. 2004)………………………13

Kone v. Joy Constr. Corp., No. 15CV1328-LTS, 2016 WL 866349,
at *4 (S.D.N.Y. Mar. 3, 2016) (Swain, J.)…………………………………………….9

Lam v. American Express Co., 265 F.Supp.2d 225 (S.D.N.Y. 2003) (Marrero, J.)…………..12

Learning Annex Holdings, LLC v. Rich Global, LLC, (SDNY 2012)…………………12

Malinowski v. Wall St. Source, Inc., No. 09 CIV. 9592 PAE, 2012
WL 279450, at *3 (S.D.N.Y. Jan. 31, 2012) (Engelmayer, J.)…………………………9

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v
Fine Host Corporation, 418 F.3d 168 (2d Cir. 2005)…………………………………12

Monagle v. Scholastic, Inc., No. 06 CIV. 14342 GEL, 2007
WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007) (Lynch, J.)……………………………… 9

Moras v. Marco Polo Network, Inc., No. 11 CIV. 2081 PAE, 2012
WL 6700231, at *1 (S.D.N.Y. Dec. 20, 2012) (Engelmayer, J.)……………………….9

## TABLE OF AUTHORITIES (cont'd)

**Page**

Mueller v. Michael Janssen Gallery Ptc. Ltd., 225 F.Supp.
207, 207 (S.D.N.Y. 2016)…………………………………………………..…9

O'Grady v. BlueCrest Capital Mgmt. LLP, 111 F. Supp. 3d 494, 505
(S.D.N.Y. 2015) (Stein, J.), aff'd, 646 F. App'x 2 (2d Cir. 2016)…………………………9, 11

Perella Weinberg Partners LLC v. Kramer, 153 A.D.3d 443 (1st Dep't 2017)………………9

Quinones v. PRC Mgmt. Co. LLC, No. 14-CV-9064 VEC, 2015
WL 4095263, at *5 (S.D.N.Y. July 7, 2015) (Caproni, J.)…………………………………9

Rosa v. TCC Commc'ns, Inc., No. 15CV1665, 2016 WL 67729,
at *4 (S.D.N.Y. Jan. 5, 2016) (Pauley, J.)……………………………………………………9

Sathe v. Bank of New York, No. 89 Civ. 6810, 1990 WL 58862
at *4 (S.D.N.Y. May 2, 1990) (Sand, J.) ……………………………………………………12

Seiden Assocs., Inc. v. ANC Holdings, Inc., 754 F.Supp 37, 40-41
(S.D.N.Y. 1991)……………………………………………………………………………..13

Snyder v. Bronfman, 13 NY3d 504, 921 N.E.2d 567, 893 N.Y.S.
2d 800, 2009 N.Y. Slip Op. 08667 (Ct App 2009)……………………………………………12

Tischmann v. ITT/Sheraton Corp., 882 F. Supp. 1358, 1370
(S.D.N.Y. 1995) (Kram, J.)……………………………………………………………………..9

Truelove v. Northeast Capital Advisory, Inc., 268 A.D. 2d 648,
702 N.Y.S. (3d Dep't 2000)…………………………………………………………………..7

## STATUTES:

NYLL §191-a.(a) ……………………………………………………………………..6

NYLL §193…………………………………………………………………………8, 9

NYLL §193(1)………………………………………………………………………….8

NYLL §193.1.(b) (i-xiv)………………………………………………………………..8

NYLL §198 1.a ……………………………………………………………………1, 6

## PRELMINARY STATEMENT

Summary Judgment is appropriate in favor of defendants (collectively "Kylin," individually "Kylin Management" or "Kang") on each of the six causes of action (referred to as "Counts") by plaintiff James Lee ("Plaintiff" or "Lee").

The first cause of action, ostensibly for unpaid sales "commissions," finds no support factually or legally since neither Lee – nor anyone – has been paid commissions at Kylin Management. The only purpose for asserting it at all apparently is based on Plaintiff's hope to recategorize his discretionary bonus compensation, which is not treated as a wage under the New York Labor Law ("NYLL"), as one of the forms of compensation, sales commissions, that is covered under the special statutory remedy provisions of NYLL §198 1.a.

The second and third causes of action are, under New York law, to be treated as one cause of action for breach of contract. As such, the Plaintiff alleges breaches that did not occur. First, paragraph sixty-one of the second amended complaint[1] totally misstates the content of the operative employment agreement dated November 2, 2015 (Ex. A to the second amended complaint), in that Lee's employment agreement provides for a base salary (of $250,000 per annum) and eligibility for a "... discretionary bonus at the end of each calendar year." Nowhere does the employment agreement refer to (1) "commissions," (2) a "3% commission" on the fees generated by the Fund in 2015, or (3) "... 10% of the fees [Lee] generated." Moreover, the "2015 Term Sheet" (Ex. F to the second amended complaint), is clearly not a contract, as it is not "signed by the party [Kylin Management or Kang] to be charged." Also, clearly contrary to the provisions of paragraph 62 of the second amended complaint, there is no "... entitle[ment] to a base salary of

---

[1] All references herein are to the second amended complaint (also sometimes "SAC") unless otherwise expressly noted.

1

$250,000... for the one-year period following his termination or resignation." Post employment payments are entirely at the discretion of Kylin based entirely upon Kylin's decision to release Lee from any post employment restrictions and to allow him to engage in competitive activity. After approximately a two-month period during which Lee was paid his salary post-termination, Kylin released Lee from any further obligations and ceased the continuation of base salary.

As a matter of law, the third cause of action (¶¶ 64-66 of the second amended complaint) duplicates the "commission" claims of the Second cause of action and should be dismissed for the same reason and as duplicative of the second cause of action.

Moreover, neither the second or third causes of action allege that Kylin breached a contract. There is no claim challenging its validity and thus its "discretionary bonus" provision. As a matter of law, these claims should be dismissed.

Similarly, under New York law, the fourth (unjust enrichment) and fifth (quantum merruit) causes of action must be merged and treated as just one claim. For several reasons, but most significantly Lee's rationale in the cases he has cited in paragraph 69 of the second amended complaint, these causes of action fail. These are quasi-contract claims. As such they only arise in the absence of a contract. The validity of the contract dated November 2, 2015, and attached to each of plaintiff's complaints is not in doubt, nor challenged. Since the second and third causes of action are breach of contract claims on the identical subject matter, a quasi-contract recovery fails under New York law.

Finally, the unjust enrichment claim against Kang (the "sixth" cause of action) fails for the foregoing reasons, as well as for the events that transpired in the first half of 2016 resulting in the execution of the Memorandum of Understanding by both Lee and Kylin (by its managing

2

partner Kang), whereby unvested incentive allocations to Lee's capital account (at non-party Kylin Principals) were waived by Lee, wherein Lee's incentive percentage for 2016 was set at 0%, and wherein Lee reaffirmed his eligibility for a discretionary bonus determined in Kang's sole discretion and with typical conditions.

In short, none of the claims can overcome the written agreements of the parties or New York law.

## STATEMENT OF FACTS

The defendant Kylin is a Delaware limited liability company located at 475 Fifth Avenue, 11th Floor, in New York City.  Liddle Affirm., Ex. A, ¶2. Ted Kang is the CEO of Kylin. Id. at ¶3.

Kylin manages hedge funds investing in Asian Equities. Id. at ¶24. Kang performs the function of portfolio manager of the Fund(s) and is the person responsible for the profits or losses of the Fund(s).  In short, he determines which securities to purchase, when, in what amount, whether to "hedge" the positions, and if so, how to hedge the positions, and he determines when to sell, or hold a position and if to sell it, in what amount(s) over what time period.  A trader makes the individual "micro-decisions" on when during a given day or other time period to buy or sell.

Another job function, aimed at feeding information to Kang for his evaluation and potential use, was performed by Plaintiff James Lee.  Lee, as a research analyst, would be expected to delve into details about potential investments, and if, and only if, the potential investment was sound, recommend it to Kang.  Lee's role did not end there, however, and his continuing role was to follow (i.e., keep his research updated) the recommended companies, update his evaluations and advise Kang if his view of a security he recommended had changed.  Once a recommendation was

made, Kang made all investment decisions, including the possibility of rejecting – and not investing in – the recommendation at all.   In addition to Lee, there were other research analysts at Kylin performing similar functions.

Lee, it is conceded for the purposes of this motion, graduated from UCLA in 1987 and has been working (except when unemployed) in the financial sector ever since.   Id. at ¶ 21. From 2002-2013, moving to the "buy side" Lee worked at hedge funds including Tiger Asia Management where he met and befriended Kang.   Id.   In 2013 Lee was engaged by Kylin as a consultant pursuant to a Consulting Agreement.   Liddle Affirm., SAC, Ex. B.

As is set forth in the agreement, Kylin agreed to pay Lee a monthly consulting fee of $13,750 per month ($165,000 p.a.) and Kang, "in his sole discretion," pursuant to enumerated conditions could "pay [Lee] a discretionary bonus" "… at the end of 2013."   Id.

In mid June 2014, Lee and Kang agreed to extend on the same terms the Consulting Agreement for another six months, until December 31, 2014.   Liddle Affirm., SAC, Ex. C.

In late December 2014, Kang and Kylin offered Lee employment as a "managing director," to start January 1, 2015 and Lee accepted in writing.   Liddle Affirm., SAC, Ex. D.

The Consulting Agreement and its six-month extension contemplated Lee's role as "performing investment research for Kylin, as well as other services, as may be requested by Kylin."   Liddle Affirm., SAC, Exs. B and C.   These duties remained the same after Lee became an employee.   Liddle Affirm., SAC, Exs. D and A.

Pursuant to each of the four agreements, Lee was eligible to be considered for a discretionary bonus to be determined by Kang "in his sole discretion."   Liddle Affirm., SAC, Exs. A-D.

4

On November 2, 2015, Lee signed another employment agreement with Kylin. Liddle Affirm, SAC Ex. A.  In all terms material, the November 2, 2015 agreement remained the same:  Lee was a managing director, his base salary was $250,000 per annum, he was eligible for a discretionary bonus to be determined in Kang's sole discretion, and he could receive up to 1 year's base salary after his employment ended only if Kylin wanted him to abide by certain post employment restraints and only for the time period before Kylin released him from the restraints. Id.

Each of the four contracts "constitutes the entire agreement between the parties." Id. at Exs. A-D.

At year end 2015, Kylin profits were significant.  Some of the gains were subject to market risk.  Kang decided to exercise restraint in the payment of the discretionary bonuses by holding back, in Lee's case, 60% of what he hoped to pay Lee against the unrealized gains would be lost.  From almost the first day of 2016, the Asian equity markets declined.  By June of 2016, the losses on Lee's recommendations had mounted to $140,000,000.  In effect, the markets had taken back all of the prior year's unrealized gains.  In June, Lee and Kang met.  The result was a signed "Memorandum of Understanding" specifically addressing Kang's compensation under these circumstances.  Kang was considering terminating Lee.  Kang suggested new written terms and they were "AGREED [TO] AND ACCEPTED." Id. at Ex. ___.  For Lee's part he promised to wipe out the losses by making recommendations that would allow Kylin's Funds to finish 2016 at least even and wipe out the $140 million in losses.  Liddle Affirm., Ex. D at page 253/7 – 254/23. At year end, however, the losses associated with Lee's recommendations had not declined and were $141 million. Id.

5

Lee left the firm in early 2017.  He was paid his salary until approximately May when Kylin no longer wanted to restrain Lee from getting a job or performing "competitive activity."

**ARGUMENT**

**I.**

**THE NEW YORK LABOR LAW PROVISION GOVERNING
SALES COMMISSIONS DOES NOT APPLY TO PLAINTIFF**

Only certain compensation can be afforded the protections[2] of the NYLL § 190, et seq. Discretionary bonuses and unvested compensation are not accorded such protection.

Here, Plaintiff repeatedly claims a right to be paid "commissions" in his second amended complaint (SAC, "Preliminary Statement" ¶¶23, 25, 26, 27, 28, 31, 32, 34, 36, 38, 39, 40, 41, 43, 51, 55, 57, 61, 66, 70 and 78).  Moreover, the relief sought relates to this "commissions" claim in parts b, c, d, e.  A commission, however, is defined in the NYLL as: "…compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of wholesale orders or sales." NYLL §191-a.(a).  Lee was neither paid nor entitled to commissions.

For the time period relevant to this case, Section 190.6 applies and defines a "commission salesman" as "… any employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions." Such sales, obviously, are to third parties.

---

[2] Bluntly, by "protection" is meant the rather significant benefits of NYLL §198 1.a which include liquidated damages, reasonable attorneys fees, and prejudgment interest and interest of 9%. The prospect of these remedies it is submitted is why such a significant focus of Mr. Lee's case is on establishing that he was paid "commissions" rather than a base salary and discretionary bonus as his contract provides.

6

Significantly, Lee was not involved in selling anything whether referred to in the above cited section or otherwise, at any time at Kylin, and certainly during his time as an employee from January 2015 until his departure in February 2017.   Instead, it is undisputed that he "performed investment research" on equity securities.

As can be seen on the face of Exhibits A-D to the second amended complaint, there never was any agreement or contract for the payment of commissions.  The only reason Lee has pled such a claim is to attempt to avail himself of the special remedy provisions of the NYLL which do not apply to him.

Lee, at Kylin, was not a salesman; he instead performed "equity research."  Kylin had no "sales;" it was a hedge fund and, as such, managed assets in the Asian equity markets for investors.  Lee's various agreements (two consulting, two employment) each set forth Lee's role: "perform equity research."  Each also entitles Lee to be "eligible" to receive "a discretionary bonus to be determined in the sole discretion of Ted Kang."  Nowhere are the words commission, sales, sales commission, commission salesman or sales representative to be found.  Indeed, the first time any of those words were used was in this lawsuit.  As set forth above, the term is used liberally throughout the second amended complaint – in the "preamble" and in at least twenty paragraphs as well as in four of the five substantive requests for relief in the ad damnum clause.

There can be only one explanation: Lee's hope that by simply calling his compensation a "commission," it will make it so.  Suffice it to say that the contractual right of Lee to be eligible "for a discretionary bonus to be determined in Ted Kang's sole discretion" is unquestioned and supported in each of the four contracts mentioned above.  Such a discretionary bonus however is not a "wage" under the NYLL.  See Truelove v. Northeast Capital Advisory, Inc.,

268 A.D. 2d 648, 702 N.Y.S. (3d Dep't 2000) (holding that "the dispositive factor in determining whether compensation constitutes wages is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable." cf. Cohen v. Avanade, Inc., 874 F.Supp. 2d 315, 321 (S.D.N.Y. 2012) and cases cited therein. Significantly the SAC is totally devoid of any reference to the "discretionary bonus." The term "commission" has been used in almost every cause of action in the SAC. Never has Lee in his pleading ever mentioned the discretionary bonus. Indeed, Lee almost stubbornly translates the actual term "discretionary bonus" into the term "commission."

II.

## AS A MATTER OF WELL-SETTLED LAW THERE WAS NO "'DEDUCTION FROM WAGES" UNDER NYLL §193

In paragraph 56 of the Second Amended Complaint, Plaintiff concludes that NYLL §193(1) states: "No employer shall make any deductions from the wages of an employee...," and then asserts that "Kylin's deductions from Mr. Lee's wages additionally violates NYLL §193(1)."

First there is no further specification of the "deduction(s)" other than the so-called "underpayment" in an amount that equals the entire claimed damages (i.e., over $3,198,000). Possibly this paragraph is a holdover from the drafting process and a mistake since the subject matter has nothing to do with "unpaid commissions." The types of deductions referenced specifically in NYLL §193 are by example only unauthorized contributions to charitable organizations, purchase of United States Bonds, paying dues for a fitness center or a health club and the like. See NYLL §193.1.(b) (i-xiv).

Indeed, this issue has been litigated at length. It is well-settled in this Court that failure to pay an alleged wage is not a "deduction" from wages covered by NYLL § 193. Indeed, the

case law interpreting NYLL § 193 in this District Court and the Second Circuit rejects Plaintiff's claim conclusively. Goldberg v. Jacquet, 667 F. App'x 313, 314 (2d Cir. 2016) (Crotty, J.) ("A 'deduction' is more targeted and direct than the wholesale withholding of wages and New York courts recognize that the purpose of section 193 is to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee.") (internal quotation marks omitted); Kone v. Joy Constr. Corp., No. 15CV1328-LTS, 2016 WL 866349, at *4 (S.D.N.Y. Mar. 3, 2016) (Swain, J.); Rosa v. TCC Commc'ns, Inc., No. 15CV1665, 2016 WL 67729, at *4 (S.D.N.Y. Jan. 5, 2016) (Pauley, J.); Gold v. Am. Med. Alert Corp., No. 14 CIV. 5485 JFK, 2015 WL 4887525, at *1 (S.D.N.Y. Aug. 17, 2015) (Keenan, J.); O'Grady v. BlueCrest Capital Mgmt. LLP, 111 F. Supp. 3d 494, 505 (S.D.N.Y. 2015) (Stein, J.), aff'd, 646 F. App'x 2 (2d Cir. 2016); Quinones v. PRC Mgmt. Co. LLC, No. 14-CV-9064 VEC, 2015 WL 4095263, at *5 (S.D.N.Y. July 7, 2015) (Caproni, J.); Moras v. Marco Polo Network, Inc., No. 11 CIV. 2081 PAE, 2012 WL 6700231, at *1 (S.D.N.Y. Dec. 20, 2012) (Engelmayer, J.); Malinowski v. Wall St. Source, Inc., No. 09 CIV. 9592 PAE, 2012 WL 279450, at *3 (S.D.N.Y. Jan. 31, 2012) (Engelmayer, J.); Monagle v. Scholastic, Inc., No. 06 CIV. 14342 GEL, 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007) (Lynch, J.); Tischmann v. ITT/Sheraton Corp., 882 F. Supp. 1358, 1370 (S.D.N.Y. 1995) (Kram, J.).

Moreover, the First Department's most recent pronouncement rejecting Lee's interpretation of NYLL § 193 came down August 29, 2017 in Perella Weinberg Partners LLC v. Kramer, 153 A.D.3d 443 (1st Dep't 2017).

## III.

## THERE IS NO BREACH OF THE AGREEMENT FOR A DISCRETIONARY BONUS SINCE NO BREACH HAS BEEN SHOWN, SUMMARY JUDGMENT DISMISSING THE SECOND AND THIRD CAUSES OF ACTION SHOULD BE GRANTED

There was an employment agreement between the Parties. (Liddle Affirm., SAC, Ex. A). That agreement superseded three previous agreements. (Id. at ¶ 12; Exs. B, C, D). It provided that Lee's compensation consisted of a base salary and discretionary bonus. (AC, Ex. A ¶¶ 1(a-b)). The discretionary nature of that bonus was unambiguous:

> You may be eligible to a discretionary bonus at the end of each calendar year. The amount of such bonus, if any, will be determined by [Manager] Ted Kang, in his sole discretion, based on, among other things, your performance and the performance of the Company and the Company's affiliates and clients.

(AC, Ex. A ¶ 1(b)) (emphasis added).

Modification of the contract required a writing signed by both Lee and Kylin. (Liddle Affirm., SAC, Ex. A ¶ 11). Only one written modification exists. (See Memorandum of Understanding attached to the Liddle Affirmation as Ex. ___.) Lee agreed to waive much of the compensation he claims to be owed now.

Lee ignores this valid modification and instead alleges a breach of "the 2015 term sheet." (Liddle Affirm., SAC, Ex. F). Two identical term sheets were given to Lee in 2015 in response to his request for guidance as to how his discretionary bonus might be calculated. (Id., Exs. E and F). Neither term sheet is contractual, neither is signed by Kylin, contains a recital of consideration, or purports to supersede the discretionary bonus.

10

The term sheets additionally fail as attempted contractual modifications for lack of consideration. See O'Grady v. BlueCrest Capital Mgmt. LLP, 111 F. Supp. 3d 494, 502 (S.D.N.Y. 2015), aff'd, 646 F. App'x 2 (2d Cir. 2016) ("To be valid, a contractual modification must satisfy each element of a contract, including offer, acceptance, and consideration."). Lee's continued employment itself will not suffice. That duty was preexisting under the employment agreement. (Liddle Affirm., SAC, Ex. A) ("You agree to devote your full working time and best efforts to the interests of the Company...").

Lee's claim for breach of the "implied covenant of good faith and fair dealing" is redundant as a matter of law since it is "inextricably tied to the damages resulting from the [alleged] breach of contract." Canstar v. J.A. Jones Construction Company, 212 A.D. 2d 452, 622 N.Y.S. 2d 730 (1st Dep't 1995); see also Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."). Lee does specify the manner by which he alleges was breached: "By [Kylin's] express refusal to pay Mr. Lee his earned commissions..." (Liddle Affir., SAC ¶66). Lee's entitlement to "commissions," however, purportedly arises from the same "2015 term sheet" that forms the basis for his breach of contract claim. (Id. at ¶61.) Both causes of action therefore claim the same damages ("commissions") emanating from the same purported contract (the "2015 term sheet"), rendering the latter redundant. The latter additionally fails for the same reason as the former; the term sheets were not contractual. Hence no implied covenant existed.

Moreover, an employment agreement affords an employer complete discretion in determining an employee's bonus, the employer has no "implied obligation to act in good faith."

Sathe v. Bank of New York, No. 89 Civ. 6810, 1990 WL 58862 at *4 (S.D.N.Y. May 2, 1990) (Sand, J.); Lam v. American Express Co., 265 F.Supp.2d 225 (S.D.N.Y. 2003) (Marrero, J.) ("[A] promise to pay incentive compensation is unenforceable if the written terms of the compensation plan make clear that the employer has absolute discretion in deciding whether to pay the incentive.").

IV.

**SUMMARY JUDGMENT SHOULD BE GRANTED<br>ON QUASI CONTRACT CLAIMS THAT ARE<br>COVERED BY A VALID AND ENFORCEABLE WRITTEN<br>CONTRACT GOVERNING THE SAME SUBJECT MATTER**

Even a cursory reading of "Counts" IV and V establishes that they are based on the identical theory and facts. As has been repeatedly stated, under such circumstances, "quantum meruit" and "unjust enrichment" are not separate causes of action. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v Fine Host Corporation, 418 F.3d 168 (2d Cir. 2005), see also, Learning Annex Holdings, LLC v. Rich Global, LLC, (SDNY 2012), and Snyder v. Bronfman, 13 NY3d 504, 921 N.E.2d 567, 893 N.Y.S. 2d 800, 2009 N.Y. Slip Op. 08667 (Ct App 2009).

Moreover, since it is quite clear that these claims are between the same parties (Lee and Kylin Management) over the same issue governed by the agreement asserted to have been breached in the second and third causes of action, recovery is precluded in quasi-contract. See Mem. Op. and Order, 17-CV-7249, dated February 25, 2019, at p.3 (Furman, J.) attached to the Liddle Affirmation as Ex. G and the discussion therein distinguishing the situation where the contracting parties are plaintiff and defendant and where a non-contracting party is made a defendant; see also cases cited infra at 12-13.

12

V.

## LEE'S CLAIM FOR UNJUST
## ENRICHMENT AGAINST KANG MUST FAIL

Three amounts have been identified as potentially constituting "unjust enrichment" "received" by Kang.  As this Court stated in its February 25, 2019 Memorandum Opinion and Order, in granting the motion by plaintiff to file a second amended complaint for the purpose of adding a sixth cause of action and a new defendant, unjust enrichment claims on the same subject matter brought by one contracting party against another contracting party ordinarily precludes recovery in quasi-contract (i.e., unjust enrichment) for events arising out of the same subject matter. In re First Cent. Fin. Corp., 377 F.3d 209, 213 (2d Cir. 2004) citing Clark Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E. 2d 190, 193 (N.Y. 1987).  It is a closer call if the claim arises where one of the parties to the claim is not a party to that contract.  Compare, Mueller v. Michael Janssen Gallery Ptc. Ltd., 225 F.Supp. 207, 207 (S.D.N.Y. 2016), to Seiden Assocs., Inc. v. ANC Holdings, Inc., 754 F.Supp 37, 40-41 (S.D.N.Y. 1991) and other cases cited in this court's Mem. Op. and Order, supra, at pages 3-5 and ftnt. 1.

a) The unvested carried interest in Kylin Principals, L.L.C.

The "carried interest" portion of the 2015 discretionary bonus paid to Lee was treated as vesting over a three year period, 40% immediately ($421,033), 40% on December 31, 2016, and 20% on December 31, 2017.

The "unvested" portion as of December 31, 2015 was $850,146.  As stipulated, on September 6, 2016, $750,881 (the prior amount minus expenses and losses charged to Lee's Kylin Principals capital account in the normal course) was debited to Lee's Principals' capital

13

account and credited to Kang's Kylin Partners capital account. This "transfer" was completely authorized by the written "understanding and agreement" dated June 16, 2016 between Kylin Management L.L.C. and James Lee and signed by each. Liddle Affirm., Ex. C, point 1.

> [James Lee] hereby forfeits and waives any right, title or interest in any Incentive Allocations allocated to [Lee's] Capital Account as a Member of Kylin Principals, L.L.C. that have not vested as of January 1, 2016 (the "Unvested Amount").

    b)  <u>The "vested" carried interest in Kylin Principals, L.L.C..</u>

This item amounts to $421,033. As set forth in the Stipulation of April 12, 2019, the amount has not been "received" by Ted Kang. Instead, it remains in Kylin Principals general account. Thus, there has been no "unjust enrichment" of Ted Kang.

    c)  <u>The 2015 discretionary bonus.</u>

Forty percent of the 2015 discretionary bonus was paid to Lee totaling ($1,218,251.). Pursuant to Mr. Kang's concerns (well-founded it turns out) that the 2015 year end unrealized profits might disappear due to 2016 losses, sixty percent was held back in case losses wiped out the 2015 unrealized gains.

The first half of 2016 was a devastating market debacle in Asian equities. Mr. Lee's recommendations suffered in the first in the first two quarters to register losses – a scorching give back if you will – of the year end 2015 unrealized gains. By the June meeting between Kang and Lee that resulted in the "Memorandum," Lee's recommendations had lost over $140,000,000 in less than six months. The two met, the Memorandum was the result. No specific reference is made to the $1,827,377.00 hold-back since it had long since been wiped out for just the

14

reason it was created: not to overpay against unrealized gains that disappeared due to massive losses in the next time period.

     That Kylin did or did not refund its 2015 performance fees that were paid by investors on the unrealized gains is a totally different story.  Lee was paid a discretionary bonus wherein part of the discretion was a holdback.[3]  Kylin for its part faced an issue with the Funds' "high water mark."  Simply put December 31, 2015 was the high water mark.  When massive losses occurred virtually immediately in 2016, Kylin was required to make back for the investors all of the losses and the 2015 performance fees (at 100%) before Kylin would be eligible to receive even one penny of performance fees.  Against how and in what amount the discretionary bonus was paid to Lee was in the sole discretion of Kang.  In short, as the court said in Cohen, supra at 321, "[w]here a plaintiff alleges entitlement to a bonus under a contract, the claim fails as a matter of law if the plaintiff fails to allege that he or she met the conditions required to receive the bonus."  Not only does plaintiff fail to assert he met those conditions, he signed the Memorandum of Understanding, and has made up the fanciful theory that these payment amounts were "commissions" all along.

---

[3] Not a "clawback" as misstated by plaintiff.  A clawback is completely different.  A clawback provision could require the firm to sue the employee to return bonus money for someone else's losses occurred after the fact or even after termination of employment.

## <u>CONCLUSION</u>

The defendants' motion for summary judgment dismissing the complaint in its entirety should be granted with costs to the defendants.

Dated: New York, New York
   April 26, 2019

         LIDDLE & ROBINSON, L.L.P.

         By:_____
           Jeffrey L. Liddle (JL 8256)

         1177 Avenue of the Americas
         5th Floor
         New York, New York 10036
         Tel: (646) 452-7211