UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                             :

JAMES LEE,                                :

                           Plaintiff,         :

                                         :         17-CV-7249 (JMF)

            -v-                       :

                                         :     OPINION AND ORDER

KYLIN MANAGEMENT LLC, et al.,    :

                                         :

                         Defendants.    :

                                         :

-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

     In this bitter employment dispute, familiarity with which is presumed, Plaintiff James Lee ("Lee") presses contract, unjust enrichment, and New York Labor Law claims against his former employer, Kylin Management LLC ("Kylin"), and its principal, Ted Kyung-Ho Kang ("Kang"), alleging that Kylin withheld — and that Kang has retained — over $3 million in compensation to which Lee was entitled. *See* ECF No. 77 ("SAC"); *see generally Lee v. Kylin Mgmt. LLC*, No. 17-CV-7249 (JMF), 2019 WL 917097 (S.D.N.Y. Feb. 25, 2019). The parties' dispute centers around several contracts and alleged contracts that governed Lee's compensation for the year 2015. Lee initially brought this action against Kylin alone but, earlier this year, sought and was granted leave to amend his complaint to add a claim for unjust enrichment against Kang individually. *See Lee*, 2019 WL 917097; *see also* SAC ¶¶ 74-79. The parties now cross-move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment: Lee on the first, second, and sixth counts in his complaint, ECF No. 104 ("Lee Mem."), at 4, and Defendants on all claims, ECF No. 109 ("Defs.' Mem."). For the reasons that follow, Defendants' motion is granted in part and denied in part, while Lee's motion is denied.

# BACKGROUND

The relevant facts, taken from the pleadings and admissible materials submitted in connection with the pending cross-motions, are either undisputed or — for purposes of this background and Defendants' motion — described in the light most favorable to Lee. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011); *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).[1]

Lee and Kang first met as colleagues at a hedge fund in in the early 2000s. SAC ¶ 22. Kang founded Kylin in 2005 and, in 2013, recruited Lee to join the firm. *Id.* After a successful start, Lee was promoted to a managing director position effective January 2015. *Id.* ¶¶ 23-25. On February 6, 2015, Lee signed both an Employment Letter setting forth the terms of his new position and the Operating Agreement of Kylin Principals LLC ("Kylin Principals"), a limited liability company composed of Kylin and the firm's Managing Directors. *See id.* Ex. D ("Employment Letter"); ECF No. 99 ("Lee Aff."), Ex. A ("Principals Agreement").

As a Managing Director, Lee's compensation had two components. Pursuant to the Employment Letter, Lee would be paid a $250,000 base salary and a "discretionary bonus at the end of each calendar year," the amount of which, "if any," was to be "determined by Ted Kang, in his sole discretion." Employment Letter ¶¶ 1(a), (b). Although the Employment Letter

---

[1] The Court is compelled to note that the parties' Rule 56.1 submissions were inadequate and essentially useless — owing both to Lee's apparent failure to submit any independent Rule 56.1 statement in connection with *his* motion (which might otherwise have been grounds for its outright denial, *see* Local Civ. R. 56.1(a)) and to both parties' stubborn, nitpicking, and counterproductive responses and replies. *See* ECF No. 113. "Local Rule 56.1 was adopted to aid the courts in deciding summary judgment motions by quickly identifying disputed material facts." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). The Rule 56.1 statements submitted in connection with these cross-motions only obstructed that purpose. The parties are admonished that the Court will not look kindly on similar conduct in connection with their joint pretrial order or, for that matter, with any other filings and appearances to come.

subjected any bonus amount to Kang's "sole discretion," another agreement — the Principals Agreement, executed by Lee and Kylin (the managing member of which was Kang himself) — contained more specifics. According to the Principals Agreement, Kylin was empowered (again, in its "sole discretion") to set an "Incentive Percentage" for a given fiscal year. Principals Agreement ¶ 12(b). Each participating employee's "Incentive Allocation" would then be calculated as a function of that "Incentive Percentage," and would be allocated to the employee's capital account in Kylin Principals, to vest on a timetable set forth in the Principals Agreement. *Id.* Pursuant to the Principals Agreement, Lee's Incentive Percentage for 2015 was 3%, and his allocation was scheduled to vest on a three-year schedule: 40% on December 31, 2015, the next 40% on December 31, 2016, and the final 20% on December 31, 2017. *See id.* at 16. The parties refer to those "Incentive Allocations" as Kylin's "carried interest" program, pursuant to which Kylin distributed a percentage of the total fees generated by the firm to qualifying employees. SAC ¶ 26; *see* ECF No. 100 ("Guggenheimer Aff."), ¶ 30. The carried interest distributed pursuant to that program "did not reflect individual performance." *Id.* ¶ 37.

In late 2014, Kylin's Managing Directors met with Kang to demand individual-performance-based compensation. Lee Aff. ¶ 11. The result of these negotiations was an agreement that — in addition to the "carried interest" percentage of firm-generated fees — each Managing Director would receive 10% of the fees paid to the firm "based on the performance of the investments each Managing Director recommended." Guggenheimer Aff. ¶ 38; *see* Lee Aff. ¶ 13; SAC ¶¶ 26-27. Lee's 2015 compensation thus had at least three components: his $250,000 base salary, a 3% share of *Kylin*'s generated fees, and a 10% share of his *own* generated fees. That compensation structure was memorialized in a "Term Sheet," the first version of which Lee signed on June 19, 2015. SAC ¶ 29; *id.* Ex. E ("June 2015 Term Sheet"). According to Kylin's

former CFO, "[t]he Term Sheet was a standard contract at Kylin" that "memorialized the specific terms of [each employee's] compensation" for a given year. Guggenheimer Aff. ¶ 34. In late 2015, Kylin again distributed the Employment Letter and 2015 Term Sheet — together, this time — requesting that they both be "signed by everyone as soon as possible"; in particular, Kylin requested that each recipient "execute by Monday." Lee Aff. Ex. E; *see id.* Ex. D at 1-6 ("November 2015 Employment Letter"), 7-8 ("November 2015 Term Sheet").[2] Lee executed those versions of the Term Sheet and Employment Letter at the same time.

After a successful 2015, Lee's 3% carried interest totaled $1,256,441 and his 10% performance-based split totaled $3,045,628. Lee Aff. ¶¶ 20-21; Guggenheimer Aff. ¶¶ 33, 53. Lee did not receive those funds immediately. Instead, his carried-interest compensation was allocated to his capital account at Kylin Principals; while Kylin withheld Lee's performance-based split altogether, claiming an inability to pay. Lee Aff. ¶ 22. Finally, in February 2016, Kylin paid Lee $1,218,251 — or 40% — of his performance-based split. ECF No. 110 ("Liddle Aff."), Ex. F ("Stipulation of Facts"), ¶ 4. Lee never received the remaining 60%. *Id.* And, despite the allocation of his carried-interest compensation (and the Principals Agreement and 2015 Term Sheet's provisions vesting 40% of that compensation on December 31, 2015), Lee has never received any portion of his 2015 carried-interest compensation. Lee Aff. ¶ 25.

Lee's next year at the firm was less successful, and on June 16, 2016, Lee and Kylin executed a Memorandum of Understanding in which Lee agreed to forfeit "any Incentive Allocations allocated to [Lee's] Capital Account as a member of Kylin Principals LLC that have

---

[2]     Because the two Term Sheets are identical, *see* Defs.' Mem. 10, the Court will refer to them together as the "2015 Term Sheet."

not vested as of January 1, 2016."  Liddle Aff. Ex. C ("MOU").  Finally, in February 2017, Kylin

terminated Lee's employment at the firm.  Lee Aff. ¶¶ 27-28.

## LEGAL STANDARDS

In ruling on a motion for summary judgment, all evidence must be viewed "in the light

most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*,

373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought,"

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

When, as in this case, both sides move for summary judgment, the district court is "required to

assess each motion on its own merits and to view the evidence in the light most favorable to the

party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia

Bank*, 661 F.3d at 171.  Thus, "neither side is barred from asserting that there are issues of fact,

sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v.

United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *see Williams v. N.Y.C. Dep't of Health &

Mental Hygiene*, 299 F. Supp. 3d 418, 424 (S.D.N.Y. 2018).

Summary judgment is appropriate where the admissible evidence and pleadings

demonstrate "no genuine dispute as to any material fact" and that "the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234,

236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if

the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the initial burden

of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*,

477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the

ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

The bulk of the parties' cross-motions can be easily and swiftly denied. That is because, in one way or another, many of Lee's claims — namely, his breach-of-contract claims (subject to one exception discussed below), his New York Labor Law claims, and his unjust-enrichment claim against Kang — turn on whether the parties' intended to be bound by the 2015 Term Sheet. That is most obviously true of Lee's contract claims, with respect to which the existence of a valid contract is an essential element. *See, e.g.*, *Optima Media Grp. v. Bloomberg L.P.*, — F. Supp. 3d —, No. 17-CV-1898 (AJN), 2019 WL 1746107, at *8 (S.D.N.Y. Apr. 17, 2019).[3] And it is also true of Lee's Labor Law claims: Section 191 of the Labor Law guarantees payment of only those commissions or wages "earned or payable in accordance with the *agreed terms* of employment." N.Y. Lab. Law § 191(1)(c) (emphasis added); *see Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010). Further, whether "incentive compensation constitutes an earned

---

[3] "[T]o the extent that" Lee's contract claim against Kylin "succeed[s]," his unjust enrichment claim against Kang may be "duplicative." *McBeth v. Porges*, 171 F. Supp. 3d 216, 232 (S.D.N.Y. 2016) (alteration and internal quotation marks omitted). Thus, his unjust enrichment claim against Kang cannot be resolved as a matter of law — at least at this stage. *See Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 390 (S.D.N.Y. 2013) ("To be sure, Plaintiffs cannot obtain double recovery for the same injury; but that prospect can be addressed at a later stage of the case, if necessary."); *Lee*, 2019 WL 917097, at *3 (describing how Lee's unjust enrichment claim against Kang might *not* be duplicative of his contract claim against Kylin). Thus, the Court will deny both motions for summary judgment as to that claim too.

wage" under Section 193 "and is entitled to statutory protection" is a function of the terms of the

employment agreement, including "the terms of the employer's bonus plan." *O'Grady v.*

*BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 502-03 (S.D.N.Y. 2015), *aff'd*, 646 Fed.

App'x 2 (2d Cir. 2016). "A claim under Article 6 of the New York Labor Law for the payment

of wages," therefore, "rises and falls with a plaintiff's claim for breach of contract." *Apple*

*Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 289 (S.D.N.Y. 2016) (internal quotation marks

omitted). That is, "[w]here an unambiguous contract provides that bonuses are discretionary, a

breach of contract claim" — and with it, any Labor Law claim — for nonpayment of such

bonuses "fails." *O'Grady*, 111 F. Supp. 3d at 503. By contrast, although "incentive pay" like

the disputed bonus amounts in this case "does not constitute a 'wage' until it is actually earned

and vested," when it is "guaranteed under [a] formula to be a percentage of the revenues . . .

generated" and "not left to [the employer's] discretion," it constitutes protected "wages" under

the Labor Law. *Reilly v. Natwest Markets Grp.*, 181 F.3d 253, 264-65 (2d Cir. 1999).

Whether the parties intended to be bound by the 2015 Term Sheet is a question of fact,

*see, e.g.*, *Ronan Assocs., Inc. v. Local 94–94A–94B, Int'l Union of Operating Eng'rs*, 24 F.3d

447, 449 (2d Cir. 1994), as to which there is plainly a genuine dispute. Construed in the light

most favorable to Defendants, the evidence could lead a reasonable jury to conclude that the

2015 Term Sheet represented only a "guideline" of what Lee could expect as a year-end bonus,

the amount of which remained a matter of Kang's discretion pursuant to the Employment Letter.

*See* ECF No. 112, at 4-5. By contrast, construed in the light most favorable to Lee, the evidence

easily supports the conclusion that the 2015 Term Sheet was, in fact, a contract between the

parties. Among other things: Kylin distributed the Employment Letter and 2015 Term Sheet

together, requesting that they both be "signed by everyone as soon as possible" — in particular,

that each recipient "execute by Monday," Lee Aff. Ex. E; Kylin's former CFO affirms that "[t]he Term Sheet was a standard contract at Kylin" that "memorialized the specific terms of [each employee's] compensation" for a given year, Guggenheimer Aff. ¶ 34; and the record contains evidence suggesting that the 2015 Term Sheet was the direct result of negotiations between Kylin and its Managing Directors, including Lee, *id.* ¶¶ 36, 39, 42; Lee Aff. ¶¶ 11-15. And, of course, there is the 2016 MOU, pursuant to which (in Kang's own words) Lee "gave up any unvested carry portion as of January 1, 2016" — something that would not have been necessary to do by "agreement" had Kang or Kylin possessed the unilateral power to deny Lee the funds. ECF No. 101-6, at 1. In short, whether the parties intended to be bound by the 2015 Term Sheet remains a disputed fact. *See Ronan Assocs., Inc.*, 24 F.3d at 449. It follows that the parties' competing summary judgment motions must be and are denied as to all claims that depend on a resolution of that fact — namely, Lee's breach-of-contract claims, his New York Labor Law claims, and his unjust-enrichment claim against Kang.

The Court must also deny Defendants' motion to the extent it depends on the enforceability of the MOU. The plain language of the MOU certainly suggests, as Defendants argue, that "Lee agreed to waive much of the compensation he claims to be owed now" — namely, portions of his carried-interest compensation that had not vested as of January 1, 2016. Defs.' Mem. 10. Lee makes two arguments in response: that the MOU is "unenforceable as a forfeiture of earned wages" and that it fails for lack of consideration. Lee Mem. 13-14. The former argument appears to rely on cases interpreting the New York Labor Law. *Id.* But that case law cannot save Lee from forfeiture of the *unvested* portions of any of the funds covered by the MOU because, under the Labor Law, "incentive pay does not constitute a 'wage' until it is

actually earned *and vested*." *Reilly*, 181 F.3d at 264 (emphasis added); *see* Lee Mem. 16.[4] By

contrast, the latter argument — that the MOU fails for lack of consideration — cannot be

resolved at this stage. Although it is well established that "an at-will employee's continued

employment can constitute sufficient consideration to support an enforceable contract," *Poller v.*

*BioScrip, Inc.*, 974 F. Supp. 2d 204, 223 (S.D.N.Y. 2013), the MOU is ambiguous on its face as

to what consideration, if any, Lee gave, and the extrinsic evidence in the record (construed in the

light most favorable to Lee) creates a triable issue of fact on that point, *see, e.g.*, *Am. Exp. Bank*

*Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (App. Div. 1st Dep't 1990) (noting that "[w]here

the intent of the parties can be determined from the face of the agreement, interpretation is a

matter of law," but "if it is necessary to refer to extrinsic facts, which may be in conflict, to

determine the intent of the parties, there is a question of fact" that precludes summary judgment).

By contrast, the Court concludes that Defendants are entitled to summary judgment with

respect to Counts III, IV and V of the Second Amended Complaint — that is, Lee's claims

against Kylin for breach of the implied covenant of good faith and fair dealing, unjust

enrichment, and "quantum meruit." SAC ¶¶ 64-73. New York law implies a covenant of good

faith and fair dealing "in all contracts," pursuant to which "neither party shall do anything which

---

[4]      If the MOU proves to be enforceable, that will include — at a minimum — the second
and third tranches of Lee's carried-interest compensation. *See* Lee Aff. ¶¶ 29-30 (admitting that
the "second and third tranches" of the carried-interest compensation provided for in the 2015
Term Sheet were subject to a vesting schedule and "had not yet vested" at the time he signed the
MOU). The Court does not address here whether the 10% performance-based split was also
subject to a vesting schedule — even though that is likely a question of contract interpretation
and, thus, a question of law. Instead, the Court will await resolution of whether the 2015 Term
Sheet was, in fact, a contract and whether the MOU was supported by valid consideration. The
Court notes, however, that the 2015 Term Sheet appears to apply a vesting schedule *only* to the
3% carried-interest portion of the compensation it describes. In other words, if the MOU is
enforceable, Lee's potential recovery in contract may be limited to the first 40% of his carried-
interest compensation (which he never received), yet extend to the *entirety* of his 10%
performance-based split (of which he has received only 40%).

will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014) (internal quotation marks omitted). "A breach of the covenant is considered a breach of the underlying contract." *Id.* But "[a] claim for breach of the implied covenant will . . . be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for the breach of an express provision of the underlying contract." *PrinceRidge Grp. LLC v. Oppidan, Inc.*, No. 11-CV-1460 (AJN), 2014 WL 11510256, at *8 (S.D.N.Y. Feb. 4, 2014), *aff'd*, 589 Fed. App'x 38 (2d Cir. 2015) (internal quotation marks omitted). Here, Defendants argue that Lee's implied-covenant claim appears to rest on Kylin's refusal to pay the "earned commissions" to which Lee claims the 2015 Term Sheet entitles him and that the implied covenant claim is therefore redundant. Defs.' Mem. 11. In response, Lee points to no evidence — much less a "scintilla of evidence," *Anderson*, 477 U.S. at 252 — that could support an implied-covenant claim independent of his contract claim, regardless of what happens to his contract claim at a later stage of this case. *See* Lee Mem.; *see also* ECF No. 115 ("Lee Reply"). Defendants are therefore entitled to summary judgment on Lee's implied-covenant claim.

Lee's other claims — for unjust enrichment and quantum meruit — are arguably one and the same. *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (noting that, under New York law, courts "analyze quantum meruit and unjust enrichment together as a single quasi contract claim," which must be dismissed "if the parties have a valid, enforceable contract that governs the same subject matter"). That is, unjust enrichment is "a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,'" is "one measure of liability for the breach of such a contract." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991)

(citation omitted) (Mukasey, J.), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992).  But either way, because the question of Lee's compensation is — as both sides agree — governed by two (if not three) agreements between Lee and Kylin, "the existence" of those agreements "between the parties will prevent [Lee's] recovery" pursuant to a claim of unjust enrichment or quantum meruit.  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991) (Mukasey, J.); *see Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175; *Lee*, 2019 WL 917097, at *2.  Defendants are therefore entitled to summary judgment on Lee's unjust enrichment and quantum meruit claims against Kylin.

## CONCLUSION

For the foregoing reasons, Lee's motion for summary judgment is DENIED, while Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  In particular, Defendants' motion is granted as to Counts III, IV, and V of the Second Amended Complaint, all of which are dismissed.  Unless and until the Court orders otherwise, the parties shall submit their joint pretrial order and associated materials in accordance with Paragraph 5 of the Court's Individual Rules and Practices in Civil Cases **within thirty days** of the date of this Opinion and Order.  They should be prepared to begin trial as early as two weeks thereafter.

That said, the Court is firmly of the view that the parties can and should put aside any ill will and settle this matter.  The Court therefore directs the parties to confer once more about the prospect of settlement, mindful of the long and expensive process they have inflicted on themselves, each other, and the Court just to get this far.  The Court notes that it will not send the parties back to the assigned Magistrate Judge, who has already expended enough effort trying to resolve this case, and thus urges the parties to consider the possibility of private mediation.  Should the parties elect to participate in mediation, the Court would consider extending the

deadline to submit the joint pretrial order and related materials.  The parties shall therefore confer and, within **two weeks** of the date of this Opinion and Order, file a joint letter informing the Court whether they wish to attempt a mediated resolution and proposing next steps along those lines, including a reasonable extension of the deadline to submit a joint pretrial order.

The Clerk of Court is directed to terminate ECF Nos. 98 and 108.

SO ORDERED.

Dated: July 31, 2019
New York, New York

JESSE M. FURMAN
United States District Judge